IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| JAMES HOWE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AVERY AYTES, DARRELL THREET, ) <br> CUMBERLAND COUNTY BOARD ) <br> OF EDUCATION, and CUMERLAND ) <br> COUNTY, ) <br> ) <br> Defendants. ) <br> ) | Case No.    2:14-cv-00077 <br> Judge Sharp <br> Magistrate Judge Brown |

**MEMORANDUM**

Presently pending before the Court is a Motion for Summary Judgment by Defendants Darrell Threet and the Cumberland County Board of Education. (Docket No. 39). Plaintiff James Howe has filed a response in opposition, (Docket No. 55), to which Defendants have replied, (Docket No. 71). For the reasons set forth below, Defendants' Motion will be granted and this case dismissed.

**I.    Factual & Procedural Background**

Plaintiff initially filed suit against South Cumberland Elementary School ("South Cumberland" or "the School"), Principal Threet, Officer Avery Aytes, the Cumberland County Sheriff's Department, Cumberland County, and the Cumberland County Board of Education ("the Board"). The Sheriff's Department and South Cumberland were dismissed as Defendants pursuant to the Third Amended Complaint, (Docket No. 14). Plaintiff has also notified the Court that he is finalizing a settlement with Defendants Aytes and Cumberland County, who have a separate pending Motion for Summary Judgment, (Docket No. 45). Due to the anticipated

1

settlement, the Court limits its analysis to the Motion for Summary Judgment filed by the Board and Principal Threet (collectively referred to herein as "Defendants").

This case arises from South Cumberland Elementary School's after-school student dismissal procedure.[1] In response to safety concerns—the gravity of which the parties dispute— South Cumberland changed the process by which parents may pick up their children after school. The first change came at the start of the 2013-2014 school year, when Cumberland South disallowed parents from entering the school building for child pickup. Parents instead had to use the drive-through pickup line or wait outside the cafeteria's double entrance until their child's name was called. The School found that this modification resulted in crowds of parents outside the cafeteria, which caused disorder at dismissal time. Plaintiff maintains that parents waited in an orderly fashion and generally were able to pick up and leave with their child in ten minutes or less. To alleviate the perceived disorder, the School asked parents to wait outside the cafeteria in a single line. Once a parent reached the front of the line, he or she would give a school employee the relevant child's name and the child would come outside. However, not even this restored order to the School's satisfaction. Although Plaintiff disputes this, the School has presented testimony that some parents would cut the line, slowing the whole process and breeding frustration.

Accordingly, after some deliberation between the School, Defendant Threet, the Parent Teacher Organization, and the Board's safety coordinator, South Cumberland decided to implement additional changes to the dismissal procedure. The School settled on a procedure wherein all parents were to remain in their vehicles, which would be marked with windshield placards containing their child's name. The School selected November 12, 2013 as the start date

---

[1] Unless stated otherwise, the following facts are drawn from the parties statements' of undisputed material facts and the responses thereto, (Docket Nos. 41, 63, 64, 71).

2

of the new procedure and gave notice to parents. Among other things, the School sent children home with forms to fill out so that the School could make name placards. To facilitate the new dismissal procedure, the School also changed its early release rule. The new rule prohibited early checkout between 2:00p.m. and 2:45p.m., except for emergencies. This change was meant to minimize traffic around the school prior to dismissal. Notice of the change in early checkout procedures was included in the notice about the pickup procedure.

The School transitioned to the new dismissal procedure on November 12, 2013, as planned, and so began Plaintiff's woes. Unaware of the new procedure, Plaintiff parked in Cumberland South's overflow lot and walked up to the School to pick up his children, as he had previously done. The School's Resource Officer, Defendant Aytes, stopped Plaintiff from entering the School and explained the new pickup procedure. All agree that the interaction between Plaintiff and Defendant Aytes grew heated as Plaintiff was denied access to his children. Plaintiff also expressed frustration with the fact that the new procedure had resulted in profound traffic congestion. Ultimately, Plaintiff's ex-wife was able to pick up Plaintiff's children in her vehicle.

On November 13, 2013, Plaintiff met with Sheriff Butch Burgess of the Cumberland County Sheriff's Office. The two discussed the new dismissal procedure and Plaintiff's attendant traffic concerns. Sheriff Burgess contacted the School thereafter to discuss the traffic issues created by the new dismissal procedure.[2]

Plaintiff again attempted to pick up his children from school on November 14, 2013. Despite the events of November 12, Plaintiff parked his car and proceeded to the School on foot.

---

[2] The parties disagree as to the legitimacy of the safety concerns that prompted the School to change its dismissal procure. They also dispute the nature and extent of the traffic issues caused by the new procedure and have different perceptions of the two interactions between Defendant Aytes and Plaintiff on November 12 and 14, 2013. Because these factual matters are not material to the question before the Court—whether the new dismissal procedure violates Plaintiff's rights under the Fourteenth Amendment—the Court does not delve into those factual disputes.

Defendant Aytes was in the office, as was a school administrator. The administrator offered Plaintiff a form that would enable his children to walk home alone unsupervised. However, Plaintiff did not want to have his children leave unescorted but instead wished to be able to pick them up on foot. Defendant Aytes said that Plaintiff could retrieve his children after the buses had cleared. Plaintiff continued to assert his right to pick his children up from Cumberland South on foot. Eventually, Defendant Aytes placed Plaintiff under arrest and took Plaintiff to jail.[3]

Plaintiff filed suit in August of 2014, alleging constitutional violations and violations of Tennessee common law. Specifically, in Count IV of the Fourth Amended Complaint, Plaintiff alleges that Defendants violated his Fourteenth Amendment rights by refusing to release his children to him on foot. (Docket No. 31 at ¶¶ 141-43). According to Plaintiff, these Fourteenth Amendment violations are ongoing because Defendants continue to "deny[ ] him the right to pick up his child from school whenever and however he sees fit." (Id. at ¶ 143). The early release rule still prevents Plaintiff from picking up his children between 2:00p.m. and 2:30p.m. and the dismissal procedure prohibits Plaintiff from picking up his children unless he does so in a car. (Id.). Defendant Aytes and the Board seek summary judgment on Count IV, which is the only cause of action against them.

## II. Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving

---

[3] Plaintiff asserted claims under the Fourth Amendment and Tennessee common law stemming from his arrest by Defendant Aytes, but those claims are only against Defendant Aytes and Cumberland County and, as such, are not pertinent to the instant Motion.

4

party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**III.   Legal Analysis**

Plaintiff invokes 42 U.S.C. § 1983 to allege violations of his Fourteenth Amendment rights. To state a cause of action under Section 1983, Plaintiff must demonstrate "(a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law." Alkire v. Irving, 330 F.3d 802, 813 (6th Cir. 2003). Here, Plaintiff alleges that Defendants deprived him of his fundamental right to "family unity." "Simply put," Plaintiff alleges, "a school cannot forcibly keep a child from his parent." (Docket No. 55 at 16). However, the undisputed facts on the record indicate that Defendants' minimal interference with Plaintiff's access to his children falls far short of a constitutional deprivation.

Plaintiff seems to rely on two distinct but conceptually related areas of Fourteenth Amendment jurisprudence. First, he asserts that Defendants have infringed upon his right to family unity. The Supreme Court has long said that the parent-child relationship gives rise to a liberty interest of which a parent may not be deprived absent due process of law. See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27 (1981) (finding it "plain beyond the need for multiple citation" that a natural parent's "desire for and right to the companionship, care, custody and management of his or her children is an interest far more precious than any property right."). Plaintiff also refers to parents' fundamental right to make decisions concerning the care, custody, and control of their children, another liberty interest encompassed by the Fourteenth Amendment. Meyer v. Nebraska, 262 U.S. 390 (1923) (statute prohibiting teaching subjects in

5

foreign languages was arbitrary interference with parents' right to control education of children); Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35 (1925) (statute requiring children to attend public school "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control"). However, neither right is implicated by the conduct at issue here.

The liberty interest in family unity (also referred to as "family integrity" or "familial association") is typically implicated by a state actor removing a child from a parent's custody, such as when a state agent kills a child or removes a child from the home. It is well-established that "a state agent must provide sufficient due process before terminating parental rights or before removing a child from his or her parent's custody." Kottmyer v. Maas, 436 F.3d 684, 690 (6th Cir. 2006) (citing Santosky v. Kramer, 455 U.S. 745, 753 (1982); Ram v. Rubin, 118 F.3d 1306, 1310 (9th Cir. 1997)). However, mere investigations into child abuse allegations, and the separation inherently involved in such investigations, do not infringe upon the right to familial association. Id. The minimal separation alleged here—Plaintiff's inability to access his children during a small portion of the day—is more akin to an investigation than a custodial deprivation. Defendants have neither removed Plaintiff's children from the home nor assumed custody over them. Instead, they merely ask him to comply with certain dismissal policies, meant to safely and expeditiously return his children to him at the day's end. Nothing on the record indicates an encroachment by Defendants that is anywhere near intrusive enough to support a claim for interference with the right to family unity.

Similarly, the right to make decisions about the care and upbringing of one's child is inapplicable. Although parents do have a fundamental right to make such decisions, see Troxel v. Granville, 530 U.S. 57, 66 (2000), the right of parents to control the upbringing and education

of their children is not without limits. See, e.g., Runyon v. McCrary, 427 U.S. 160, 177 (1976) (no parental right to educate children in private, segregated schools). The Sixth Circuit has shed some light on the extent of parents' rights when it comes to dictating the day-to-day aspects of their children's education:

> The critical point is this: While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally committed to the control of state and local authorities.

Blau v. Fort Thomas Pub. Sch. Dist., 401 F.3d 381, 395-96 (6th Cir. 2005) (internal quotation marks omitted).[4] Blau reaffirms the Supreme Court's common-sense directive that "[c]ourts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104 (1968). As much as Plaintiff would prefer to pick up his children on foot, his inability to do so does not violate his constitutional rights. Just as a school may set the hours of the school day without running afoul of the Fourteenth Amendment, it may set the procedure for school dismissal.

---

[4] Citing Goss v. Lopez, 419 U.S. 565, 578 (1975); Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 291 (5th Cir. 2001) ("While [p]arents may have a fundamental right in the upbringing and education of their children, this right does not cover the [p]arent's objection to a public school Uniform Policy."); Leebaert v. Harrington, 332 F.3d 134, 142 (2d Cir. 2003) (The fundamental right to control the upbringing and education of one's child does not include "the right to tell public schools what to teach or what not to teach him or her."); Swanson v. Guthrie Indep. Sch. Dist., 135 F.3d 694, 699 (10th Cir. 1998) (parents do not have a fundamental right to send their child to school part-time only and pick and choose the classes she takes); Herndon v. Chapel Hill-Carrboro City Bd. of Educ., 89 F.3d 174, 176 (4th Cir. 1996) (requirement that high school students perform community service in order to graduate does not violate parents' right to control education of their children); Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 462 (2d Cir. 1996) (applying rational-basis review to determine that high school could require community service before graduation); Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 533 (1st Cir. 1995) (parents' fundamental right to control a child's education does not include the right to control curriculum at their child's public school); Kite v. Marshall, 661 F.2d 1027, 1029 (5th Cir. 1981) (parents have no fundamental right to send their children to summer athletic camp against school regulation prohibiting such camps).

The absence of a constitutional violation entitles Defendant Threet to qualified immunity. See Pearson v. Callahan, 555 U.S. 223 (2009) (holding that courts may exercise their sound discretion in deciding which of the two qualified immunity prongs—whether a violation occurred and whether the right was clearly established—should be addressed first). Moreover, the absence of a constitutional violation deters the Court from addressing another argument briefly mentioned by the parties: whether the Board is liable under Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). See Preiser v. Newkirk, 422 U.S. 395, 401(1975) (noting that "a federal court [lacks] the power to render advisory opinions."). In light of the anticipated settlement between Plaintiff and the County Defendants, the failure of Plaintiff's Fourteenth Amendment claims effectively ends the litigation.

## IV. Conclusion

For the reasons set forth above, the Court concludes that no Fourteenth Amendment violation has occurred. The undisputed facts on the record entitle Defendant Threet and the Board to judgment as a matter of law. A separate order shall enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE